DAWSON, Respondent, v. WOMBLES, Appellant.

St. Louis Court of Appeals, March 21, 1905.

1. **PRACTICE: Action on Note: Province of Jury.** In an action on a promissory note, where the facts warrant a peremptory instruction for plaintiff, the computation of interest and the amount due must still be left to the jury.

2. ————: **Peremptory Instruction.** As a general rule, where the plaintiff makes out his case by parol evidence, the issues of fact should be submitted to the jury though the evidence is all one way; it is the province of the jury to weigh and determine whether it believes the evidence to be true.

3. **PROMISSORY NOTE: Evidence of Payment: Agency: Release of Mortgage.** In an action on a promissory note, where the evidence showed that the plaintiff's father had the custody and control of the note with authority to collect and credit payments thereon, the release of a mortgage securing the said note and acknowledging payment, by the father, was admissible in evidence in defense of the action.

Appeal from Lincoln Circuit.—*Hon. Houston W. Johnson,* Judge.

REVERSED AND REMANDED.

*W. A. Dudley* and *Norton, Avery & Young* for appellant.

(1) While the release is not in strict conformity to the law then in force, Laws 1887, p. 234, it was still a valid release prima facie, in view of the testimony of J. W. M. Palmer and the facts in evidence in this case. J. W. M. Palmer was certainly prima facie agent for Jennie L Dawson, plaintiff. Beacham on agency, sec. 373; 7 Cyc. Title, Commercal Paper, page 1031, Para, "B," and note 59; Ferneau v. Whitford, 39 Mo. App. 310; Cummins v. Herd, 49 Ark. 139; Sharpe v. Knox, 49 Mo. App. 169; Hoppe v. Sailor, 53 Mo. App. 4; Ingalls v. Everett, 34 Mo. App. 371.

(2)   There certainly can be no contention but that the judge of the court exceeded his authority both in giving the peremptory instruction at all, and in directing the jury as to the amount of said verdict.

To sustain our position on this last contention, we cite the court to the following authorities:   Cates v. Nickell, 42 Mo. 169; Burghart v. Brown, 60 Mo. 24; Poulson v. Collier, 18 Mo. App. 583; Ryors v. Pryor, 31st Mo. App. 455; Dyer v. Coombs, 65 Mo. App. 151; Corbitt v. Mooney, 84 Mo. App. 645.

*Martin & Woolfolk* and *Pearson & Pearson* for respondent.

While as a general rule, peremptory instructions should not be given for the plaintiff, yet there are exceptions to this rule as well established as the rule itself, to-wit:

First:   Where the judgment is manifestly for the right party, it will not be molested by the appellate court on account of a peremptory instruction.   Ford v. Dyer, 148 Mo. 541, 49 S. W. 1091; Wolf v. Campbell, 110 Mo. 120, 19 S. W. 622.

Second:   When the facts are practically undisputed, a peremptory instruction is not error.   Hawes v. Mulholland, 78 Mo. App. 500; Brewery Co. v. Lindsey, 72 Mo. App. 591.

Third:   When there is no evidence tending to prove any defense to plaintiff's demand.   Hoster v. Lange, 80 Mo. App. 238; Mosby v. Commission Co., 91 Mo. App. 504; Bank v. Hainlaine, 67 Mo. App. 483.

### STATEMENT.

This case has been here before and is reported. (Dawson v. Wombles, 104 Mo. App. 272).   Defendant is the administrator of James R. Palmer, deceased.   The cause originated in the probate court of Lincoln county. Plaintiff filed for allowance against the estate of James R. Palmer, deceased, her demand consisting of a promissory note dated July 2, 1887, for the sum of $515.50, pay-

able one day after date, with interest at eight per cent per annum. The note was made payable to Nancy E. Palmer, and was signed by James R. A. Palmer, X (his mark) and attested by John W. M. Palmer. On the back thereof is the following assignments: " I sign the within note for value received to Jennie L. Palmer. Signed Nancy E. Palmer, X (her mark) attested by J. W. M. Palmer and J. S. Williams." There is also a credit on the back of said note as follows: "Received on the within note $22, September 5, 1893."

A trial was had thereon in the probate court and the finding was for the defendant administrator. Plaintiff appealed to the circuit court. On the trial in the circuit court the execution of the note sued on was not denied under oath, in fact it was not denied at all.

The plaintiff introduced as a witness John W. M. Palmer, who testified that the plaintiff, Jennie L. Dawson, is his daughter and was formerly Jennie L. Palmer, the assignee mentioned in the assignment on said note; that James R. Palmer, deceased, the maker of the note, was his brother, and Nancy E. Palmer, the payee in said note, was the mother of himself and the maker, James R. Palmer; that his mother formerly lived with him and owned a number of head of cattle, but he finally left the farm and moved to Louisiana and his mother went to live with the other son, James R., now deceased; that James R. was not able to keep the cattle for the mother as he had done, therefore, she sold them to James R. on account, which ran on for several years; that finally James R. and his wife separated and about the same time his mother became an invalid and was a great care, could not help herself in bed, and it was necessary to make other arrangements about taking care of her. Witness then returned to his farm, moved his mother there, brought his daughter, the present owner of the note, out to the farm to take care of her grandmother. The daughter put off her marriage in order to care for the old lady. At this time his mother and James R.

had a settlement. Witness went over their accounts for them at their request as neither could read or write. The face of the note was the amount found due the mother. He wrote up the note and signed James R. Palmer's name to it at his request, and James R. made his mark, which the witness attested. Afterwards, witness' mother concluded as his daughter was taking care of her in her last days, she ought to have the little she had so she gave her this note. Witness further said: "At my mother's request I wrote the assignment on the note to my daughter and signed her name to it, she making her mark. It was attested by myself and J. S. Williams. After my mother died, I paid the funeral expenses. James R. agreed he would pay one-half but did not do it, finally I spoke to him about it one time and he said he would do it if he could have credit on the note for the amount so paid. I spoke to my daughter about it and she consented to it. He then paid me some money and a load of corn, in all $22 and at his request, with my daughter's consent, I credited the $22 on the note as a payment. I kept the note in my possession all the time. My daughter married shortly after the assignment of the note to her and the note remained in my possession. She never did have possession of it nor did her husband. It remained with me until after my brother's (James R. Palmer's) death. I had control of it up to the time I delivered it to Mr. Dawson, my daughter's husband, about a year after my brother's death." Witness also said that it was the desire of his mother that James R. should not be pushed on the note until it became more convenient for him to pay it. In connection with this evidence, plaintiff introduced the note.

The case was tried to a jury. It is somewhat difficult to arrive at the theory of the defense in the first instance; it finally shifted around to that of payment, however. The evidence seems to be in scraps, as is likely in cases of this nature, where one party is dead and

his administrator and attorney are making the best fight possible with limited information as to the facts arising out of the circumstances of the case. It seems that an effort was made to show that the note was made at the time James R. Palmer's wife left him, and a deed of trust therewith, in order to cover up his property and was for that reason without consideration, but this was not shown and was not pressed very far. Then an attempt was made to contradict plaintiff's witness by showing by neighbors that the old lady was not reported to own any property at the time the cattle transaction was mentioned, and that none of them ever heard of her holding a note against James R. Palmer. This, on objection, was of course excluded by the court. Finally for the purpose of showing payment, defendant sought to introduce in evidence a deed of trust dated December 17, 1888, by James R. Palmer to B. N. Vance, trustee, for J. W. M. Palmer, William Palmer and Jennie L. Palmer, in amount $1080.50, covering certain lands, crops, farm machinery, horses, cattle, etc., and securing the payment of three notes therein mentioned; one of even date therewith to J. W. M. Palmer for $325, one of date July 2, 1887, to William Palmer for $248, and one of date July 2, 1887, payable to Nancy E. Palmer for $515.-50, all of said notes being due one day after date and with eight per cent interest from date; also the deed record showing said deed was recorded in deed of trust record book 23, page 540, in Lincoln county, and the following marginal indorsement on said record showing release of said deed of trust: "The deed mentioned in the within instrument of writing has been fully paid and discharged. I hereby acknowledge satisfaction in full and release the property herein conveyed from the lien and incumbrance thereof this thirteenth day of January, 1889. Signed J. W. M. Palmer, beneficiary. Attest, J. H. Alexander, recorder of deeds." In connection with this offer of testimony defendant recalled J. W. M. Palmer and he testified that the signature on

said marginal release was his proper signature, that he wrote it there; that James R. Palmer gave the deed of trust securing the note involved in this suit with the other notes and that the note in suit is the third, or five hundred and fifteen dollars and fifty cent note therein mentioned. In the controversy arising over said offer, defendant's counsel clearly indicated the purpose of said offer and his theory as follows: "Mr. Avery. I say the whole evidence shows that J. W. M. Palmer was the agent of his daughter up until 1891, and that she never had possession of the note. It seems that he took this deed of trust securing the payment of this note and the record itself shows the payment of the note. This is the same note sued on and there is the acknowledgment of satisfaction over his signature in which he says it is fully paid and discharged. It is clearly competent." The court sustained an objection and excluded the offer with the remark: "I do not think he. could bind the other parties." To which ruling defendant excepted.

The defendant asked several instructions, all of which the court refused. Plaintiff requested and the court gave the following instruction in her behalf:

"The court instructs the jury that under the pleadings and the evidence in the case there is no defense to the note sued on and that your finding must be for the plaintiff in the sum of $515.50 together with eight per cent interest per annum thereon from the third day of July, 1887, less a credit of $22 bearing date September 5, 1893, making a total of $1184.47."

Defendant excepted to the giving of the above instruction at the time. The record then shows that "thereupon the court prepared and submitted to the jury the following verdict: 'We, the jury, find for the plaintiff and we assess the amount of her recovery at the sum of $1184.47.'" The court designated J. M. Simpson, one of the jurymen, as foreman of the jury, and then and there directed him to sign said verdict, which said Simpson did in obedience to the direction of the court without

any calculation being made by him or any other member of the jury and said verdict was thereupon returned as the verdict of the jury; to all of which defendant excepted at the time. Judgment was entered thereon for the plaintiff, and after unsuccessful motions for new trial and in arrest, the case comes here by appeal.

NORTONI, J. (after stating the facts).—Appellant assigned as error the action of the court below in peremptorily directing a verdict for the plaintiff. Judge Thompson, in his work on trials, lays down the law thus: "When there is nothing for a jury to determine except the amount of the principal and the interest due on a note, it is competent for the court to instruct them as to the character of their verdict." 2 Thompson, Trials, sec. 2265. But this rule does not obtain in Missouri. Our Supreme Court has long since said: "It is plain that the jury must make a finding upon all the issues presented by the pleadings. All the facts necessary to support the judgment must be found, and the court is not authorized to invade the province of the jury in this respect. . . . .The amount of the debt due at the time was not passed upon by the jurors, and this could only be done by them as triers of the fact." Cates v. Nickell, 42 Mo. 169. In the case above cited the court based the decision upon the statutes of 1865, chapter 169, section 21 and 26 and said: "These sections contain the provisions by which this question must be determined. The first directs that 'in every issue for the recovery of money only, or specific real or personal property, the jury shall render a general verdict.' The text provides as follows: 'When a verdict shall be found for plaintiff, in an action for the recovery of money only, the jury shall also assess the amount of the recovery.'" R. S. 1899, secs. 721, 726. The facts before the court in that case were, the jury had returned a general verdict on a note for the plaintiff. The court discharged the jury and figured the amount of note and interest for which

judgment was entered.   The judgment was reversed for
the reason stated.   This case has been followed by the
Supreme Court and by this court and the Kansas City
Court of Appeals.   Burghart v. Brown, 60 Mo. 24;
Ryors v. Prior, 31 Mo. App. 555; Poulson v. Collier, 18
Mo. App. 583; Dyer v. Combs, 65 Mo. App. 146; Corbitt
v. Mooney, 84 Mo. App. 645.   Corbitt v. Mooney, supra,
was a suit on a note against a surety.   The execution of
the note was admitted.   The court instructed the jury
to find for the plaintiff in the sum of $522.50.   Judge
ELLISON said :   "It was the province of the jury to calcu-
late the amount due and the court should not have di-
rected what amount the verdict should be.   . . . . . . . . It
is as much of a violation of the proper practice for the
court to first calculate the amount and interest and then
direct the jury to find that amount as it would be to do
so after the jury had found generally for the plaintiff."
It seems that the doctrine has been carried to the ex-
treme in this State; but we must remember that the cases
above cited originally rested upon the authority of the
Supreme Court's interpretation of the statutes above re-
ferred to, and there seems to be no good reason, aside
from the statutes, why in a proper case, say in a case of
a suit on a note between the original parties thereto
(where the execution of the note is admitted, the note
itself making a prima facie case without parol evidence,
and the defense interposed thereto has wholly failed)
the court should not figure up the amount of the note
and interest and direct a verdict for the plaintiff, as it
amounts to no more than the court peremptorily direct-
ing the jury as to the construction of a written contract
which is not only proper, but the duty of the court.   The
law is well settled in this State, however, that it is the
province of the jury to make the computation and that it
is error for the court to do it for them.

It is true there are cases where a peremptory in-
struction to find for the plaintiff is permissable; and
such is said to be proper in a case under the pleadings

turning wholly on the construction of a contract which is always a question of law for the court and not of fact for the jury; or when the answer admits a plaintiff's cause of action and pleads new matter as a defense and the evidence wholly fails to support such defense. The general rule is, however, that where a plaintiff introduces parol evidence to support his case, the issues of fact should be submitted to the jury. Even though the evidence is all one way, it is the province of the jury to weigh and consider it and to answer whether or not it believes the evidence to be true. It is an invasion of the province of the jury for the court to direct them that they must accept as true and act upon the evidence of witnesses. Wolff v. Campbell, 110 Mo. 114, 19 S. W. 622; Ford v. Dyer, 148 Mo. 528, 49 S. W. 1091; Vincent v. Means, 82 S. W. 96; Bryan v. Hickman, 4 Mo. 106; Vaulx v. Cambell, 8 Mo. 224; De Graw v. Prior, 53 Mo. 313; Gregory v. Chambers, 78 Mo. 294; Steamboat Memphis v. Matthews, 28 Mo. 248; Crow v. State, 14 Mo. 252.

Appellant contends that the court erred in excluding from evidence the deed of trust securing the notes sued on, and the release thereof executed by J. W. M. Palmer, reciting that the debt therein had been fully paid and acknowledging satisfaction thereof. Under the evidence in this case, this ruling of the trial court was certainly error. It was proved by the witness Palmer that one of the notes mentioned in the deed of trust as having been paid was the identical note in suit. It was not only proved by respondent that J. W. M. Palmer had acted for the parties in doing all the writing, drew up and signed the note in the first instance, but had at all times kept the note under his control and management for his daughter until after his brother's death; that he had acted for his daughter in collecting from the maker and crediting on said note the only payment ever made thereon. In fact no one else ever had anything to do with the note until after James R. Palmer's death. Respondent had, by thus leaving con-

trol, management and custody of the note with her father, with authority to collect and credit thereon, held him out to the maker as her agent for the purpose of collecting, crediting and discharging the note, and in the event the note was paid to him while thus being held out as agent, a receipt executed by him under those circumstances would be as valid and binding as if executed by the respondent herself. If a principal by his course of dealing, holds one out as his agent to receive and credit money on securities and thus induce his creditors to pay money to such person, he is certainly concluded thereby. To permit the principal in such a case to deny the authority of the agent would be to perpetrate a fraud upon the debtor. Vaderline v. Smith, 18 Mo. App. 55; Gibson v. Zeibig, 24 Mo. App. 65; Ingalls v. Averitt, 34 Mo. App. 371; Ferneau v. Whiteford, 39 Mo. App. 311; Sharp v. Knox, 48 Mo. App. 169; Brooks v. Jameson, 55 Mo. 505; Story, Agency, sec. 127. "The authority to receive payment on securities may often be implied from their possession by the agent. . . . The presumption in these cases is founded upon the agent's possession of the securities." Mechem, Agency, sec. 373. "Authority to receive payment may be implied from facts and circumstances existing prior to or in connection with the payment and the holder of paper may be estopped to deny the authority of one whom he has clothed, intentionally or through negligence, with ostensible authority." 7 Ency. Law & Proced., p. 1031, par. B. Plaintiff should have been permitted to introduce in evidence the deed of trust and the release thereof signed by respondent's agent, for what it was worth, as tending to prove payment of said note. The court erred in excluding this evidence. Of course we all understand that in many cases deeds of trust and mortgages are released of record in order to accomodate the parties for some reason among themselves sufficient at the time, when in fact no payment has been made thereon and this is quite likely to occur among members of a family. The re-

lease acknowledging satisfaction is not final, however, or conclusive on the question of payment. . It can be explained by other evidence parol or otherwise, like any other receipt, if there is an explanation to make. A receipt is aways subject to explanation and construction. There is no sanctity about it which renders it conclusive. Aull v. Trust Co., 149 Mo. 1, 50 S. W. 289; Allen v. Kennedy, 91 Mo. 324, 2 S. W. 142; Bobb v. Bobb, 89 Mo. 411, 4 S. W. 511; Altringer v. Capeheart, 68 Mo. 441.

It is unnecessary to notice the instructions refused.

For the errors mentioned the judgment is reversed and the cause remanded. All concur.