IDA KROGE, Respondent, v. MODERN BROTHER-
HOOD OF AMERICA, Appellant.

Kansas City Court of Appeals, May 6 and December 2, 1907.

1. BENEFIT SOCIETIES: Citizenship: Residence:. Verdict: Ad-
ministration. Residence may refer either to a settled abode or
to one merely of some duration; and under the evidence in the
case a recitation in a certificate of an assessment association
that the insured resided in Kansas is not conclusive as to his
citizenship; and a verdict that he was a citizen of Missouri is
held supported by the evidence and that domiciliary admin-
istration was properly granted in Missouri.

2. ————: Certificate Payable to Legal Representative: Assess-
ment Association. A provision in a benefit certificate making
it payable to the legal representative of the insured under the
Missouri statute, makes the association an assessment asso-
ciation and not a fraternal beneficiary association.

3. ————: ————: ————: Suicide. Suicide of the insured is not
a defense against the collection of the certificate issued by an
assessment association, unless the certificate was taken out
with the intention of suicide.

4. ————: ————: Trial Practice: Jury: Statute. Under section
726, Revised Statutes 1899, it is the duty of the jury to assess
the amount of their verdict where the action is for the recovery
of money only as on the benefit certificate, and it is error for
the court to instruct the jury in giving them a form of verdict
what they should return.

## On Motion for Rehearing.

5. ————: ————: ————: ————: ————: Assessment Associa-
tion. Under section 7903, Revised Statutes 1899, in an action
on a certificate issued by an assessment association, the
amount due on such certificate is a matter of law for the
court and not for the jury, though the matter of interest
thereon is for the jury, and the court cannot compute the in-
terest and tell the jury to include it in their verdict.

Appeal from Jackson Circuit Court.—*Hon. John G.
Park*, Judge.

AFFIRMED, *si.*

*Kinley & Kinley* and *Sherwood & Young* for appellant.

(1) Gustof Herzberg was a resident of the State of Kansas at the time of his death. It is a settled rule of law, not requiring at this day the citation of authorities to maintain it, that the administration of all goods of an intestate, wherever situated or found, is to be made according to the law of the land of the testator's domicile. Spreading & Keeton v. Pipkin, 15 Mo. 133. And this defect being one which became manifest for the first time upon the trial of the cause may be taken advantage of under the general denial interposed by defendant. Seay v. Sanders, 88 Mo. App. 487; Overshriner v. Brittain, 169 Mo. 351; Poor v. Watson, 92 Mo. App. 101; White v. Dyer, 81 Mo. App. 643. (2) Gustof Herzberg was a resident of the State of Kansas and not a resident of this State at the time when the certificate of membership was issued to him and hence the provisions of sections 7890 and 7896, Revised Statutes, afford no protection to the beneficiary certificate in suit even though these sections were in all respects valid and constitutional enactments. Sections 7890 and 7896 of the Revised Statutes of Missouri conflict with both the Federal and State constitutions and are therefore inoperative and void. (3) And since the suicide and misrepresentation clauses of the contract will be enforced in the absence of any legal inhibition to the contrary, these counts in the answer presented facts which constitute insuperable barriers to plaintiff's recovery herein. Hansford v. Benefit Ass'n., 122 Mo. 50; McDermott v. Modern Woodmen, 97 Mo. App. 636. (4) The beneficiary under the certificate of Gustof Herzberg is estopped to deny that defendant is a fraternal beneficiary association, authorized as such to operate under the laws of Missouri. Cass County v. Insurance Co., 188 Mo. 16, and cas. cit.; Bank v. Trust Co., 187 Mo. 518, et seq; Davidson v. City, 102 Mo. 153, et seq; Land Co. v. Railroad, 161 Mo. 604; State

v. Knowles, 185 Mo. 171; Joyce on Insurance, sec. 1311; 2 Herm. on Estoppel, sec. 719, p. 848, sec. 1252, p. 1401, and sec. 1254, p. 1402. (5) The character of contracts issued by defendant fixes its status as that of a fraternal beneficiary society. Toomey v. Supreme Lodge, 147 Mo. 139; McDonald v. Assn., 154 Mo. 618; Hansford v. Assn., 122 Mo. 50. (6) The court erred in giving plaintiff's second instruction, because there was no evidence to support same; in fact all the evidence showed without controversy that Herzberg committed suicide. Ewing v. Goss, 41 Mo. 492; Cross v. Railroad, 56 Mo. App. 664; Moore v. Hawk, 57 Mo. App. 495; Stokes v. Distilling Co., 64 Mo. App. 420. (7) The court erred in giving the first and second instructions, given of its own motion, because the same was 'the usurpation of the province of the jury. The defendant had the right to have the amount of the recovery passed on by the jury. Cates v. Nickell, 42 Mo. 169; Poulson v. Collins, 18 Mo. App. 583; Corbitt v. Mooney, 84 Mo. App. 645; Dawson v. Wombles, 111 Mo. App. 532; R. S. 1899, secs. 721, 726.

*Lawrence & Lawrence* for respondent.

(1) The Jackson probate court had power to issue the order authorizing plaintiff to sue in her own name. R. S. 1899, secs. 2, 4. (2) This order is not subject to collateral attack. It is conclusively presumed the court did its duty, and the defendant waived any defect in parties by answering. Johnson v. Beazley, 65 Mo. 264; Brawford v. Wolfe, 103 Mo. 391; Devers v. Howard, 88 Mo. App. 260; Dodson v. Lomax, 113 Mo. 555; Sheridan v. Nation, 159 Mo. 27. (3) Defendant does not come within the description of sec. 1408, R. S. 1899, and is not entitled to the benefits of the Fraternal Beneficiary Association Law. Herzberg v. Modern Brotherhood of America, 110 Mo. App. 328; Pauley v. M. W. A., 113 Mo. App. 473; Loyd v. M. W. A., 113 Mo. App. 19; Balt-

zell v. M. W. A., 98 Mo. App. 157; State ex rel. v. O'Rear, 144 Mo. 157; Brassfield v. M. W. A., 88 Mo. App. 208. (4) The policy is a Missouri contract. It is governed by the Missouri laws and the law is a part of the contract. There is no violation of the State or Federal constitutional provisions and there is no estoppel. Cravens v. Insurance Co., 148 Mo. 583; Moore v. Insurance Co., 112 Mo. App. 696. (5) Where defendant admits there was sufficient evidence to submit the issue to the jury it cannot shift its position on appeal and claim the contrary. Hopkins v. M. W. A., 94 Mo. App. 402; Hayes v. Bunch, 91 Mo. App. 467. (6) The law of the case controls. Herzberg v. M. B. A., 110 Mo. App. 328; Bealey v. Smith, 158 Mo. 515; Corey v. West, 165 Mo. 452; Lawson v. Spencer, 90 Mo. App. 514.

JOHNSON, J.—This is an action brought on a death benefit certificate issued by defendant to plaintiff's deceased husband. The first trial resulted in a judgment for defendant, but on the appeal of plaintiff to this court, that judgment was reversed and the cause remanded. [Herzberg v. Modern Brotherhood of America, 110 Mo. App. 328.] At the second trial, plaintiff recovered judgment for the full amount authorized by the certificate, with interest thereon, and defendant appealed.

It appears that defendant is a fraternal beneficiary association incorporated under the laws of the State of Iowa, and that a lodge of the order known as Crescent Lodge No. 593 existed in Kansas City, Missouri, with headquarters at No. 702 Southwest Boulevard. In August, 1900, Gustof Herzberg, a single man, became a member of this lodge by initiation into the order, and in his written application for membership, in which he applied for a benefit certificate in the sum of $1,000, stated that his residence was No. 8 Central avenue, Kansas City, Wyandotte county, Kansas, and, in his answers to questions concerning his health, said that he

had never been afflicted with syphilis. On August 30th following, a death benefit certificate was delivered to him at the lodge room, together with a receipt for the payment he was required to make. The undertaking of defendant, expressed in the certificate, was "to pay in case of death of said Gustof Herzberg while in good standing as a member of the order one full assessment on all of the members of said society not to exceed $1,-000 to the legal representatives of said member.

At the time the certificate was delivered, Mr. Herzberg and plaintiff had agreed to intermarry and on the evening of the 25th day of October, following, were married in Kansas City, Missouri, at the home of the plaintiff's sister. Plaintiff testifies that they intended to begin housekeeping at once in a house situated in the latter city in the neighborhood of the residence of plaintiff's sister. Before his marriage, Mr. Herzberg lived in a boarding house at No. 8 Central avenue, Kansas City, Kansas, and near a packing house where he was employed as a common laborer.

On the morning after the marriage, he went to the boarding house, and what occurred there is told by a chambermaid who was introduced as a witness by defendant. "The last time I saw him alive was the day of his death in the morning. When I first saw him, he was coming up the steps, and he walked up the steps and looked in the room that he saw open and every room he passed he looked in, unlocked his door and slammed the door, and he was in the room about fifteen minutes when I heard two shots. I went on with my work until I came to his room, then I knocked on the door and he did not answer. . . . Then I unlocked the door and said, 'Are you sick or drunk?' No answer. Then I walked up to him, saw he had a pistol in his right hand upon his breast. I ran down and told the landlady, when we both went up to the room."

Mr. Herzberg was dead when found, and beyond

question his death was caused by shots fired from the revolver found in his hand. The physician who was called to examine him testified that he discovered the deceased had been suffering from syphilis in an advanced stage.

The citizenship of the insured does not appear to have been treated by counsel at the trial as a fact of much importance, and the evidence in the record bearing on that fact is very meagre, but some of the questions now presented with great earnestness by defendant make it a question of first importance. Defendant insists the statement made in the application that the residence of the applicant was in Kansas should be taken as conclusive evidence that he was not a citizen of Missouri at that time, while plaintiff contends that she adduced substantial evidence tending to show that her husband was a citizen of Missouri, and therefore, that an issue of fact was raised which the court properly sent to the jury in the instructions given. The evidence of plaintiff on this issue consists entirely of her own testimony, and is to the effect that before he established his residence at the boarding house in Kansas, Mr. Herzberg had been living on the Missouri side of the line and intended to resume his residence in Missouri on his marriage. Before this action was brought, the probate court of Jackson county, on the application of plaintiff and the finding that her husband died possessed of personal property no greater in amount than that allowed by law as the absolute property of his widow, made an order that plaintiff, as such widow "be and hereby is authorized and empowered to collect, sue for and retain said property as her absolute property as provided by law and that letters of administration on said estate be refused."

Before the second trial in the circuit court, plaintiff was married to a Mr. Kroge, and an order was made by the circuit court that thereafter the proceedings

should be conducted in her present name. The principal defenses pleaded in the answer and urged upon our consideration are predicated on the facts, which defendant contends are indisputable, that Mr. Herzberg, at the time of the delivery of the certificate to him and of his death, was not a citizen of the State of Missouri, and that his death was suicidal. It is provided in the certificate that if the holder thereof "shall die by his own hand . . . whether sane or insane . . . then this certificate shall be null and void and of no effect." The issues of fact submitted to the jury appear in the first and second instructions given on behalf of plaintiff, which are as follows:

1. The court instructs the jury that if you find from the evidence that the plaintiff was the widow of Gustof Herzberg, deceased, at the time of the institution of this suit; that an order was made by the probate court of Jackson county, Missouri, authorizing Ida Herzberg to sue for property belonging to the estate of Gustof Herzberg and refusing letters of administration, and further find that Gustof Herzberg was a member of and had his life insured by defendant in the sum of one thousand dollars, payable to his "legal representatives" at his death; that Gustof Herzberg had paid all assessments and dues and other payments required by the law of the defendant to be paid by him up to the time of his death; that Gustof Herzberg was, at the time of the issuance of the certificate herein a citizen of Missouri; and if you further find and believe from the evidence that when Mr. Herzberg applied for the policy sued on herein he did not contemplate suicide, then your verdict will be for the plaintiff.

2. The court instructs the jury that if they believe from the evidence that Gustof Herzberg was killed in any other manner than by suicide, they will find for the plaintiff.

Thus instructed, the jury in returning a verdict for

plaintiff must be held to have found the fact of citizenship in accordance with the contention of plaintiff, and our first inquiry will be to ascertain whether or not defendant is justified in asserting that the verdict, in this respect, is without substantial evidence in the record to support it. On the assumption that the insured should be held in law to have been a citizen of Kansas at the time he received the benefit certificate, defendant argues first, that the probate court of Jackson county had no jurisdiction over the domiciliary administration of his estate, and therefore, that the order of that court refusing to grant letters of administration and attempting to give to plaintiff the ownership of the personal property, including the cause of action, if any, arising on the death benefit certificate, was extra-jurisdictional and invested plaintiff with no authority to maintain this action; second, that should we continue to adhere to our former decision that the death benefit certificate on which this action is founded is to be governed by the statutory rules applicable to policies issued by regular insurance companies (section 7896, Revised Statutes 1899) and not by those controlling certificates issued by fraternal beneficiary associations, the provisions of this action cannot be invoked by plaintiff to preclude the interposition of the defense of suicide for the reason that, by the express terms of the statute, they are restricted in their operation to policies of insurance issued to citizens of this state, and do not inure to the benefit of citizens of other states or countries.

We do not find it necessary to discuss these propositions on their merits, for the reason that in the view we take of the evidence before us, their basic fact, viz., that the insured was a citizen of Kansas, has been conclusively determined by the verdict of the jury to be non-existent. The statement of the applicant that his residence was in Kansas was not necessarily a declaration

that he was a citizen of that State, and in endeavoring to ascertain the meaning intended to be placed on that statement, consideration should be given to the circumstances under which it was made. As defined by lexicographers, the word "residence" may refer either to a fixed and settled abode, or to one merely of some duration. In the circumstances of the present case, it is fairly inferable that the latter definition was the one intended to be used. As a common laborer, it was natural for him to take lodgings near the place of his employment, and the fact that this required his removal from this State is by no means indicative of a purpose to abandon his citizenship therein. As a general rule, a given employment of a common laborer is not of long duration, and when we consider that the applicant was to be married shortly and on the occurrence of that event intended to reside in Missouri, the facts and circumstances strongly tend to show that his citizenship in Missouri had not been lost by his temporary removal to Kansas, and that in speaking of his residence as being in Kansas, reference was made to his temporary abode. Thus it appears that the verdict in its relation to this issue is supported by substantial evidence, and we must assume as proved the fact that the insured, at the time the certificate was issued was a citizen of this State. This being true, and it further appearing that the certificate was issued to the insured in this State, the contract is to be construed and governed by the laws of this State in force at the time it was made.

It follows from the conclusions expressed that the probate court of Jackson county was possessed of jurisdiction over the domiciliary administration of the estate left by the insured and had authority, under the provisions of sections 2 and 4, Revised Statutes 1899, to make the order under which this action was brought. And, further, it follows that section 7896 is of avail to plaintiff should we adhere to our former ruling that the cer-

tificate before us is to be classed as a policy issued by an ordinary insurance company, and therefore, without the purview of the laws relating to contracts of fraternal associations.

We held, in that opinion, that, as the stipulation in the certificate making the death benefit payable to the legal representatives of the member was one a fraternal beneficiary association incorporated under the laws of this State could not make, the contract could not be held to be one entitled to the benefit of the laws pertaining to such associations, and, therefore, was included within the scope of the provisions of section 7896. The principle underlying that decision has the support of the great weight of authority in this State (Pauley v. M. W. A., 113 Mo. App. 473; Loyd v. M. W. A., 113 Mo. App. 19; Baltzell v. M. W. A., 98 Mo. App. 157; State ex rel. Supreme Lodge v. O'Rear, 144 Mo. 157; Brassfield v. M. W. A., 88 Mo. App. 208), and is too well settled to require any further discussion.

Reaffirming what we before said, and adopting it as a part of the present opinion, we must hold that the defense of suicide could not be interposed successfully against the action of plaintiff except on the showing that the insured contemplated suicide at the time he made his application for the certificate, and as the question of such contemplated suicide was submitted to the jury as one of the issues of fact and was resolved against the contention of defendant, the judgment recovered by plaintiff would not be disturbed but for the presence in the record of error we are about to discuss.

Referring to the amount of plaintiff's recovery, the court instructed the jury as follows: "If the jury finds for the plaintiff in this cause, they will assess the damages at one thousand dollars together with interest thereon at the rate of six per cent. per annum from the 16th day of May, 1901, to this date." Form of verdict: "If all of you agree upon a verdict for plaintiff it may

be in the following form: We the jury find the issues for the plaintiff and do assess her damages at twelve hundred and forty dollars. ————, Foreman."

It will be noticed in the first of these instructions the court directed the jury to compute the interest, while in the second, the interest is computed and included in the amount stated so that, taken together, the instructions amount to a peremptory direction to find a given sum in the event the issues of the case were found in favor of plaintiff. It is contended by defendant that this, being an invasion of the province of the jury, constitutes reversible error.

Section 726, Revised Statutes 1899, provides: "When the verdict shall be found for the plaintiff in an action for the recovery of money only, the jury shall also assess the amount of the recovery." Plainly this expresses a legislative intent to clothe the triers of fact with the exclusive right to determine the amount of the verdict in actions for the recovery of money only, and the courts of this State may be said to have gone to the extreme in enforcing a rigid recognition of that right. [Cates, Adm., v. Nickell, 42 Mo. 169; Poulson v. Collins, 18 Mo. App. 583; Corbitt v. Mooney, 84 Mo. App. 645; Dawson v. Wombles, 111 Mo. App. 532; Burghart v. Brown, 60 Mo. 24; Ryors v. Prior, 31 Mo. App. 555; Dyer v. Combs, 65 Mo. App. 146.] In Corbitt v. Mooney, supra, the action was on a promissory note for $300 and interest. Defendant was a surety and the only defense made by him was that he had signed the note "without any consideration long after it had been executed and delivered to the payee." We held it error for the court to instruct the jury to "find for plaintiff in the sum of $522.50 unless defendant was found to be a surety signing without consideration," on the ground that it was the province of the jury to calculate the amount due and the court should not have directed in what amount the verdict should be, and we observed that the proper prac-

tice to be followed in such cases "is to direct a finding for the amount of the note and interest without stating in advance what that amount is." In Cates v. Nickell the action likewise was on a promissory note, and the only defense offered was the denial of the execution of the note. The jury returned a general verdict in favor of the plaintiff thereby finding that defendant had executed the note, and the court, thereupon, entered judgment for the face of the note with accrued interest. The Supreme Court held this to be an invasion of the prerogative of the jury, and in the opinion, declared that the note "upon which the suit was brought is not to be taken as conclusive evidence of the amount due, and the court could not assume that fact from the general verdict rendered." In neither of these cases is there any suggestion that the court incorrectly computed the amount due as shown by the face of the contract, and in the Cates case, the plaintiff argued, as does the plaintiff in the present case, that the error should be treated as a mere irregularity and not as one prejudicial to any right of the defendant. But that contention was rejected, we think, for a very good reason. The vice of the assumption by the trial judge of the right to direct a verdict for a stated amount in cases of this character is that such action is a clear encroachment on ground belonging exclusively to the jury. It is the exercise of a function beyond those pertaining to the office of judge, and to say that as long as the judge does that which the jury should have done, had it been permitted to exercise its functions, the excessive act should be treated as a harmless irregularity, would not only be to ignore the plain intent and purport of the statute, but would be giving countenance to the idea that a judge may, within certain limits, assert the right to discharge functions with which he is not clothed by virtue of his office. A person is as much entitled to have his case tried without any interference with the jury in the performance of its

Kroge v. Modern Brotherhood of America.

duties as he is to have a trial by jury, and error involved in a deprivation of this right clearly is prejudicial, no matter how righteous the judgment entered may appear to be from the face of the record. The obligation of defendant expressed in the certificate was to pay plaintiff the proceeds of "one full assessment on all the members of said society not to exceed one thousand dollars." We do not find any evidence in the record tending to show what would have been the amount of the proceeds of an assessment, but in the absence of proof, the presumption is to be indulged that an assessment would have paid in full the amount named in the certificate. [Benefit Association v. Swenson, 49 Kan. 449.] With the aid of this presumption, the obligation expressed on the face of the policy was to pay the full sum of $1,000, but the liability of the defendant under the policy was a contested issue, the burden was on plaintiff to establish the existence of that liability and as that burden was in no manner relieved by any admission of defendant, either in the pleadings or the evidence, the court, as was said in the Cates case, was in no position to assume, as a matter of law, that the amount stated on the face of the policy should be taken as conclusive evidence of the amount due. In such state of case, the amount of the recovery was a question of fact to go to the jury.

A careful inspection of the record discloses no other error, but for that noted, the judgment is reversed and the cause remanded. All concur.

ON MOTION FOR REHEARING.

JOHNSON, J.—After the foregoing opinion was announced, our attention was directed to section 7903, Revised Statutes 1899, which provides that "every policy or certificate hereafter issued by any corporation of this State doing business in conformity with the provis-

ions of this article and promising payment to be made upon a contingency of death, sickness, disability or accident, shall specify the exact sum of money which it promises to pay upon each contingency insured against, and the number of days after satisfactory proof of the happening of such contingency at which such payment shall be made, and upon the occurrence of such contingency, unless the contract shall have been voided for fraud or breach of its conditions, the corporation shall be obligated to the beneficiary for such payment at the time and to the amount specified in the policy or certificate; and the said indebtedness shall be a lien upon all the property, effects and bills receivable of the corporation," etc.

The article mentioned is that relating to "insurance companies on the assessment plan." Under our ruling that the policy in controversy is not to be treated as a death benefit certificate issued by a fraternal beneficiary association, it should be classed as one issued by an assessment company and thus brought within the operation of the statute quoted. A proper construction of the statute requires us to hold that in actions on policies issued by assessment companies, the assessment of the amount due on the policy, exclusive of the accrued interest is not an act for the jury to perform under the provisions of section 726, Revised Statutes 1899, but is a matter of law and, therefore, one with which the jury has no concern. Consequently, the court committed no error in stating the amount of the indemnity the policy required defendant to pay in the event of loss (Goodson v. National Accident Assn., 91 Mo. App. 339), but we still adhere to the conclusion that it was error for the judge to compute the interest and instruct the jury to include the result of that computation in the verdict.

Accordingly, the order to reverse and remand the cause is set aside and the judgment is affirmed on condition that within ten days from the filing of this opinion,

the plaintiff will enter a remittitur for the amount of interest included in the judgment. All concur.